22841. Good afternoon, your honors, government counsel, Norman Seabrook. May it please the court, Norman Seabrook appeals from an order of Senior District Judge Hellerstein entered on March 10th, 2022, which denied his habeas corpus proceeding. He denied it without a court appearance. He denied my application for referral to a magistrate. He denied it without affidavits from anyone. He denied it without any input from petitioner's counsel. He held no hearing. Under the circumstances of this case, he gave no advance notice. He just simply pulled the trap door and dismissed the case without prior notice. That violated Marchabrota v. The United States 368 U.S. 487 and United States v. Heyman 342 U.S. 205. This court, in a trilogy of cases, Pham v. The United States, the late Judge Pooler's opinion, 317 Fed 3rd 178. Wang v. The United States 458 Fed Appendix 44 and Chang v. The United States, the late Judge Winter at 250 Fed 3rd 79, laid out a pathway for a judge in a habeas case who doesn't want to hold a hearing. At minimum, you get affidavits. At minimum, you get input from counsel. Judge Hellerstein did none of that. What were the disputed facts? The disputed facts were whether trial counsel had conveyed to Norman Seabrook the conflict of interest that Judge Hellerstein had, and which is discussed in a per curiam opinion, the United States. Versus reckoning 75 Fed 4th at 131. Counsel? Yes, sir. I thought it was undisputed that the putative conflict was discussed in open court after the sidebore where Mr. Seabrook was present. So when you say there was a dispute of fact as to whether counsel relayed that to his client, Mr. Seabrook was present in open court. In response to your question, it was a two-step process. Commendably, the government wrote a letter- Right, there was a sidebar. There was a sidebar. After which dealt with a different relationship and a different witness which was not disclosed to Mr. Seabrook. That was a sidebar conference between trial counsel and Mr. Seabrook. The first dealing with a former intern was discussed in open court, the other was not. Well, it was. There was, Mr. Wright, so they discussed the first two people who were the subject of the letter. Yes. And there was a sidebar off the record where they discussed recknets. And when they came back on the record, then the judge says, the parties have asked me to put this on the record. Let me now tell you about recknets. And that was in open court where Mr. Seabrook is present. So- Wasn't just about recknets. Recknets was the witness, but the contact that the judge had that prompted this was a close family friend, the son of somebody that he was close to. That was not contained in the- I'm sorry. Let's distinguish, because that was on the earlier panel. I don't remember any suggestion that what was said at sidebar differed materially from what was said in open court. Well, what you heard and what you decided in recknets, or what the panel in a per curiam opinion decided in recknets, was based upon what recknets raised at a separate time under separate circumstances. No, it was what Huberfeld's lawyer raised separately in a future when he was preparing for sentencing. And Huberfeld's lawyer had talked to witnesses who reported what Recknets had said, or rather what Kaplan had said. And then that letter that Huberfeld's lawyer submitted was then sent to Huberfeld in the Recknets case on the docket. Right, but none of this was sent to Seabrook, and my point is that what went on between the two lawyers who went to the sidebar with Judge Hellestein wasn't conveyed to my client. My client's affidavit should have triggered a hearing, or at the very least, affidavits consistent with the trilogy of cases from this court. So, let's assume that that's, in terms of what disputes might call for a hearing. Let's assume that everybody agrees that your client wasn't told. If the court concluded that there's no legal violation in not telling your client, and if he's right about that, then is there a problem having done it summarily rather than afterwards? Yes, because the United States Supreme Court and this court in construing 28 USC 2255 says you gotta give the petitioner notice. This is not a game, this is somebody's life. My client is stuck with a $19 million restitution award as a result of a judge who never should have sat on this case, who was running interference for various people that he was close to. Go ahead. Well, now Judge Robinson, I think, had a follow-up question. Well, it sounds like your argument, which is slightly different, and it may be right, but it's slightly different from what I understood your argument appealed, is that the judge had an unwaverable conflict and shouldn't have been sitting at all. Which is- That's number one, but this, I'm sorry. Is that the argument you're making? Because I read your argument as being that there was ineffective assistance of a client in giving your client the opportunity to make the decision whether to raise the issue of a conflict, which is a distinct argument from it being ineffective assistance of counsel to not have argued it himself without regard to your client's input. Well, the briefs here were written before I had the benefit of the pecurium opinion in the case that Judge Nardini sat on, Reckonance. So the knowledge that my client had was of necessity limited. But my point is, if only on procedural grounds, this case is procedurally fought. It is in direct conflict with the procedures that are supposed to be followed. All I'm asking for is a remand to the district court and a reassignment to another judge. Counsel, I've just got a question because now I'm a little confused. What is the procedural rule that you're referring to? If a judge wants to dismiss a 2255, give the petitioner advance notice. That's the procedural rule. That's what Marcia Broder said. That's what Hanley said. That's what all the cases say. Give them notice. So if I am the presiding judge, so long as I give you notice, that is the defendant and defense counsel a notice. And an opportunity to be heard. So that's the extra part of the rule that I'm trying to elicit. When you say an opportunity to be heard, you mean to have an evidentiary hearing? No, under the trilogy of cases, had the judge had before him affidavits, which he didn't, a statement from trial counsel, which he didn't, he could have denied a hearing. I'm not saying- But you didn't ask for that. I'm sorry? Did you ask for an affidavit in the 2255 papers? Did you ask for an affidavit from trial counsel? I pointed out that there was none before the court. That was the court's responsibility. This is not a kangaroo court. Wait a minute, wait a minute, wait. You said it's the court's responsibility to get an affidavit? I thought the parties make motions to the court asking for things to happen. I asked for a hearing. I submitted an affidavit. It was unrebutted on this record. Why was it unrebutted? They know better than I do. They submitted no affidavit. They submitted no statement. This is procedurally flawed. My client didn't get a fair day in court. I'm asking for just that. Send it to the district court. I want a fair judge. That's what I want. Can I ask a question that goes back to Judge Robinson's question? Let's assume, for the sake of argument, that your client was not in fact informed by counsel of the conflict. That he didn't hear what happened in open court and that his trial counsel did not in fact tell him any of it. So your client was oblivious and that trial counsel waived the conflict. What is the governing law that says that's a Sixth Amendment violation? Can you cite a case? I've cited them in my brief. No, I'm asking you now. That says that, not extrapolating from large principles about client autonomy. I'm saying, do you have a case that says that it's deficient performance under the first prong of Strickland for a lawyer to waive a conflict of interest without consulting with the client? It's the client's choice. I do not have a case from this court that has ruled on that either way. No sir. Any other court? No sir. Okay. Do you, so I want to make sure I understand the scope of your argument. Let's assume for a minute, I could see an argument that you have us and here's your shot to make your legal argument as to why dismissal's inappropriate as a matter of law. Not just because of the process by which it happened. And I'm trying to understand, I understand your argument that it's deficient performance not to consult your counsel. Are you separately arguing that it's deficient performance to have, even if he consulted with his client, is it deficient performance to have not called for recusal in this case? Yes. The client drives the bus. Okay, okay. So if he said to the client, I don't recommend that we move to recuse, and your client said, okay, then there's no effective assistance of counsel in this record? Correct. Can you tell me, where did you make this argument in your brief? I didn't understand you to have been making an argument that counsel was deficient based on which decision he made, which is to not seek recusal based on this record. I thought your argument was simply, he was deficient in not consulting with his client before making it. Do you see the distinction I'm trying to draw? Yes, and the certificate of appealability limited what I could brief. But my point is that in this particular case, what's important under the Sixth Amendment is who's driving the bus, and right or wrong, good or bad, it should be the client, not the lawyer. Lastly, it caused prejudice because when Judge Hellestein took over the case, he changed the law of the case. He allowed the jury to hear about the loss that was suffered by the Correctional Officers Association, and then later stuck Seabrook with the longest sentence and a $19 million. No other defendant, including Recknitz, got a restitution award anywhere like that. So I urge the court to remand this case for procedural flaws to the district court. And as it did in Recknitz, with direction that it be reassigned to another judge. Thank you. Thank you very much. We'll hear from the government. Good afternoon, Your Honors. May it please the court, my name is Jared Schaefer. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States on this appeal. I'd like to start with three quick clarifications following Mr. Adler's presentation. The first is that Judge Hellestein did, in fact, disclose on the record that he had a relationship with Andrew Kaplan, as you pointed out, Judge Nardini. That's at addendum 12, and that was in open court, and Mr. Seabrook was present for that. So the assertions in his affidavit that he was unaware of that conflict are incorrect, or that his counsel kept it from him are incorrect and demonstrably false, based on his own affidavit. So is it your view that a defendant who hears something in open court, counsel's over there talking to the judge, whatever, is accountable for not independently raising an objection in the face of a contrary representation by his counsel? No, Your Honor, I wouldn't go that far. I would say here, though, that it is a very different circumstance. Judge Hellestein's actual direction was that if either the government or the defense had an issue with him presiding over the trial based on his disclosures at that time, they should let him know by Monday. Defense counsel indicated that he didn't have any concerns. Defense counsel was Paul Sheckman at the time. He said that right away. I'm sorry, Your Honor? He said that virtually right away. He did, Your Honor. But to your point, Judge Robinson, if, in fact, Mr. Seabrook had a concern about that, he could have talked to his attorney, who'd still had the opportunity to submit a letter by Monday if he had changed his mind. Was that, remind me the context of that hearing, was that a pre-trial hearing? When was that relative to selection of the jury? It was a pre-trial hearing, Your Honor, triggered by the government filing a letter notifying Judge Hellestein of certain relationships that had come to light between Judge Hellestein and some of the either defendants or anticipated witnesses so that Judge Hellestein could make a recusal decision. Now, I'm going to ask something which I suppose is rather hypothetical. Maybe there's no answer. I had been proceeding on the understanding that in the briefs the discussion was or the argument is simply, is there a Sixth Amendment violation because the facts as disclosed at the sidebar are the same that were disclosed in open court and did the defense lawyer violate Strickland by not then pausing, going back to counsel table and consulting with his client before waiving the conflict or saying, Your Honor, I don't know what we're going to do. Let me talk to my client. We'll get back to you. Is there a scenario where the facts that were disclosed at the sidebar were more extensive than the facts that were then immediately put on the open court record such that the rather more extreme facts that came out later in the context of Huberfeld and then Recknitz's cases came out? So I don't think there was any suggestion in the record that those additional facts were put forward at the time of the Seabrook pre-trial hearing. But if there were, if there were a disconnect between an extensive set of facts revealed at the sidebar and a very small subset that were revealed on the record, in that hypothetical situation, do you think that we'd be deciding this in a different way from what you propose? And I agree with Your Honor that those are not the facts here. But assuming that there was some off-the-record disclosure that was more substantial than what was on the record, I think that in that situation, you might have a different question. And that might be an appropriate situation where you would get input from the attorney, from the trial attorney, and whether he ever had a discussion with his client. In that situation, the lawyer may have an obligation to consult with his client to make a determination based on the information that hasn't been conveyed to him. But that's not what happened here. And I think I would point out that Mr. Adler's and Mr. Seabrook's arguments go further than that and say that only Mr. Seabrook, under any circumstances, could have made that decision because it's akin to pleading guilty or filing an appeal. And that is not something that's reserved for the client, just for the client. I think Mr. Seabrook's— Ultimately, that is the government's argument, that that is not something for the client. It's not— It's something that a lawyer can, in this case, in Mr. Sheckman's discretion, decide based on no consultation with the client. Is that your ultimate— In this case, yes, Your Honor. And we think that's supported by this court's decision in Bayless. There may, at the outside edges of that, be situations where the decision takes on such enormous import in the case. For instance, if, in an extreme case, a judge had looked at a defendant and said, you know, you look like a criminal to me, and then the lawyer chose not to move for refusal, there may be places in which that decision— If we were— So where's the line? I thought you were making sort of a very strict argument with no line, with respect to consulting about recusal. I think it is clear in this case, Your Honor. I was only trying to indicate that I think that at the edges, where you get into kind of the area of McCoy v. Louisiana, where it's a question that really goes to the heart of the overarching defense, perhaps there may be other considerations this court can consider a case like that. But here, we are in the heartland of Bayless, and the question of whether this is, in the main, a strategic and tactical decision for the lawyer. And we are firmly within that ground here. So in this case, it is a clear question. So is the— This is something I've been struggling with. Does the ineffective assistance analysis, is it coextensive with the Sixth Amendment autonomy analysis? Or is there a universe in which there are things that are decisions within the realm of a lawyer under the autonomy doctrine, but that a reasonable lawyer wouldn't decide without conferring with their client? And therefore, it doesn't— It's a breach of sort of the standard that you would expect of a reasonable lawyer. Are those— Is that a non-existent hypothetical, that if it doesn't breach the autonomy right, then it's not an effective assistance of counsel not to share it? I think that really gets to the question that mixes both law and professional ethics and the standards of professional representation, and where those combine is Strickland. So I think there may be a set of cases where a certain decision would not impact the client's autonomy right, but maybe something that a reasonable lawyer should consult with his client about. And if that would be an objective measure, and that the objectively prevailing standards of reasonableness for attorneys would require most lawyers to consult with their client, that's something that the court could take into consideration under the Second Prejudice Prongless Treaty. Does it matter whether the reason that the lawyer acted as he acted was that he made a tactical decision about costs and benefits of different ways of going forward versus a legal error, demonstrable legal error in assessing the existence or lack thereof of a conflict that would require recusal? Yes and no, Your Honor. So I think that there is a difference between those two circumstances, but I think the way that they're evaluated is the same. And that asks whether a strategic decision or a legal determination fell so below the bar of professional reasonableness that you violate the First Prongless Treaty. Wouldn't you, in order to conduct that analysis, need an affidavit from the lawyer explaining why the decision was what it was? In other words, if the lawyer says, I concluded that there was zero merit to a recusal motion on these facts, otherwise I would have pursued it. And in fact, that legal judgment falls below the standard of analysis, then it's not a tactical decision at all. Wouldn't that potentially support an effective assistance claim? And wouldn't we need an affidavit from the lawyer so we knew whether that was the fact? I see my time has almost expired. Sorry. Nice try. No, no, no. You got plenty of time. You got a lot of time. You got plenty of time. I promised I was going to ask for more. So I think in many cases, perhaps, not in this one. And the reason is that Mr. Adler is retained counsel for Mr. Seabrook. They crafted this 2255, and they crafted the claims the way they thought was important. I would note that if you look at pages 12 and 13 of his opening brief, he also notes that at some later point, Mr. Rechnitz claimed that he was never informed of this disclosure. The only way that that statement could be in that brief is if Mr. Seabrook was aware at the time that he filed this appeal that there was ongoing litigation over the recusal issue. So there's no question that he was aware of it and chose not to raise a separate claim. But getting to your question, Judge Robinson, I think that in some cases, you may ask for an attorney to explain the reasons behind their decision. But here, we don't even get there because the affidavit and papers that were submitted in favor of this claim never even alleged that Mr. Seabrook would have instructed his client to seek recusal. And the statements that he does make are demonstrably false. He would have instructed his lawyer to seek recusal. Yes, Your Honor. I'm sorry. He would have instructed Mr. Sheffman to move for recusal. And the statements that he does make in his 100-paragraph affidavit, in only three paragraphs, are demonstrably false. He says that this information was unknown to him and kept from him by his attorney. And all you have to do is look at the government's addendum, which is the transcript of that proceeding, to know that that's not true. So I think that in- So your first point is a prejudice point. That's right, Your Honor. So can I ask you about that? Because that's interesting. Because I had understood the appellant's prejudice argument to be focusing on, had Judge Hellerstein recused himself, the rulings in the case would have been different. I think what I hear you arguing is that there's a step before that, which is you know, reasonable probability of different outcome. Meaning, even if this had been aired with the client, assuming it hadn't been, would the client have prompted his lawyer to make a motion in the first place, which could have prompted recusal? Is that what I'm hearing you say? That if, unless there's some likelihood that Mr. Seabrook would have asked, demanded that his client file a recusal motion, and that his lawyer would have acquiesced in that request, which he may or may not have had to, that's sort of the first step of figuring out whether there's a reasonable probability of a different outcome? Is that right? That's right, Your Honor. Mr. Seabrook's alleging that his counsel was deficient in that he didn't follow his instructions or he refused to follow his instructions. And the premise for that is that he would have instructed Mr. Sheckman to seek recusal of Judge Hellerstein. And that's simply not reflected in any of the papers. And so it was appropriate for the judge under 2255B to dismiss this petition. But if that was the basis, doesn't that strike, isn't that the kind of reasoning that's exactly why we generally do require notice before the court dismisses? Because if the answer to that is, oh, if you think my pleading is deficient on that, it's absolutely I would have instructed. I thought it was implicit, but let me amend my complaint to make it explicit. If that was the reasoning, that seems like not something that you could just decide on the papers and not give an opportunity to be heard. I don't think that's right, Your Honor. I think that what Mr. Seabrook has referred to as this practice of providing notice is the common practice in pro se filings. I don't think it is the practice when you have a retained lawyer who crafts your 2255 carefully and files the claims that you intend to file. And I also think that it is significant to look at what statements an individual is willing to say under oath in an affidavit and what they are not willing to say in an affidavit. How similar or different is this prejudice analysis in this circumstance, the second product of Strickland, from a situation where someone files a 2255 seeking to undo their guilty plea? Different scenario. Where we require them to allege that had whatever the error that's alleged to occur not happened, they would not have entered the guilty plea. How similar or different is that to here? Where I think what you're arguing is, had the consultation occurred, we still have to have some allegation or some indications of proof from Mr. Seabrook that he would have asked his lawyer to have the judge recuse himself. How similar or different is that analysis? I'm puzzling through from the withdrawal of plea. Is it the same? Is it different? I don't know the answer. So I think it's very different, Your Honor. And that's because the decision to plead guilty is one of the ones reserved to the client. So in that case, you can kind of cut right to the core of the issue, and you can say, this is the client's decision. Was counsel deficient in helping him make that decision? Here, because the decision whether or not to move for recusal is not something that's reserved for the client, you need a little bit more to understand whether counsel's performance was deficient. And one of the things that you would need to understand is whether his client would have ever even instructed him to move for recusal. And it's not clear whether the lawyer would have had to listen to that. Sort of like if the client says, you must raise a hearsay objection, and the lawyer says, I'm not raising a hearsay objection. That's right. You wouldn't have to. Right. So I think that our argument would go further than that, too. And that was just an answer to your specific question. But the idea is that prejudice is injected at two separate possible points. At the first point, where he has, in your view, not made an affidavit, a claim that had he suggested to his lawyer, Mr. Sheckman, that he seek recusal, he didn't make that point. Right? Second point is that it's unclear that Judge Hellerstein would have recused. Is that also correct? I think it's unlikely that Judge Hellerstein would have recused. And Mr. Seabrook needs to demonstrate that, in fact, there was a reasonable probability that the outcome would have been different. And just to go to the end, usually we don't ask whether the outcome is different for intervening things, like would the outcome have been different on a motion to suppress or something. We're asking for outcome determination, which is, would he have not been convicted? Or in this case, perhaps he was arguing sentencing, because that's on another outcome. Would he need to prove prejudice, ultimately, not be able to rest on just establishing prejudice at some intervening link in the chain of events, but also have to show, A, he would have told his lawyer to ask for recusal, B, the judge would have recused himself, or that we would have, I suppose, held that on appeal. And then C, that that would have yielded a different outcome in terms of the verdict of the sentence. I think that the traditional analysis would be that you need to show that there would have been a different outcome that's connected to the relief that you seek. Which is ineffective assistance of counsel as the relief, right? Right. You're getting an habeas petition, you get back to square one. Yeah. His relief would be to reverse his convictions and his sentencing. So he would have to show that those outcomes would be different. The reason we've specified- But I guess I'm just wondering, I'm sorry, again, I'm thinking towards the outcome determinativeness. We usually think in terms of harmless error, but what do you do when the question, the claim would be that you had a non-waivable conflict, or not a non-waivable, but a conflict that would have prompted recusal of the judge? Would that be viewed by us as structural error? Or how would we ever evaluate that for harmfulness? How do you hypothesize what a hypothetical other judge would have done with rulings? I think, so two things, Your Honor. The first is, I don't think that you have to hypothesize in this situation. Because Mr. Seabrook did have a direct appeal. And this court affirmed all of, most of the primary- Well, but if the recusal issue had been preserved, and he had asserted it, and the lawyer had asserted it, right? We would have, and if the judge hadn't recused, now you have the reckonance case, you can see we would have reversed. Potentially, Your Honor. I would differentiate that slightly. Not potentially. Really? It's a published opinion. It's binding on us. No, that's- Same set of facts. That's for sure. I would say that reckonance doesn't control here, though. Because first of all, Mr. Seabrook has not raised the substantive- And I understand your point there. I'm just suggesting in the chain of what would have happened differently, right? Because you have to hypothesize a world where there's a change in the outcome, or at least a reasonable probability of a different outcome. If the outcome here would be that he would have preserved a recusal claim, even if it had been denied. But now we know that if that had been preserved and presented to us, the outcome would have been reversal of the conviction. So perhaps in those circumstances, in that hypothetical situation, I think you would do exactly what Your Honor did in the opinion that you wrote for Exxon Mobil VTIG insurance. Essentially, as this court has applied in both civil cases and criminal cases, you look to the Liljiburp factors that the Supreme Court has identified, which is not necessarily a harmless error analysis, but has some similarities and identifies that the burden that would be placed on the parties, on justice and the public, and on the public perception of the judiciary. That was easy because another judge had already given a completely fresh look to the case and came out the same way. So it was almost irrelevant how an earlier judge had gone about ruling because we had in front of us another district court who had given a fresh de novo look at the case and came out a certain way. Right. And we don't have that. So in those circumstances, I think you would remand for consideration by another judge who would determine whether or not vacature was appropriate. But again, that claim has not been raised here and Mr. Seabrook was aware of it. And that's the first argument. Yes, you're right. Yes. That's why I mentioned the two prongs or the two areas where prejudice is injected. That's right. With respect to this notice issue that your friend on the other side, on behalf of Mr. Seabrook, argued in connection with an evidentiary hearing, is that in the government's view within the scope of the certificate of appealability? Because I think it's a limited certificate, but maybe I'm wrong. It is an extremely limited certificate of appealability. I think it's not, Your Honor. We have assumed for purposes of briefing and argument that the issue of whether or not counsel was ineffective subsumes Judge Hellerstein's resolution of that issue. But I think strictly reading the COA, it is not within the bounds of that. Thank you very much. We'll hear from counsel Mr. Seabrook. I'll be brief. A lot of good questions, a lot of good colloquy, very important issues, constitutional and statutory. I respectfully submit that's why if you had a hearing, if you had findings, whether they helped me or hurt me, all of this would never have happened. That's why the Supreme Court said what it said. That's why your predecessors wrote what they wrote. There was a process. Judge Hellerstein didn't follow it. The motive? Read Recknitz. Remanded for a hearing before a fair judge. That's all I ask for. Thank you. Thank you very much for a reserved decision.